IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MATTHEW J. WHITE                                                                                         PLAINTIFF

V.                                        Case No. 4:24-CV-00122-BRW-BBM

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration[1]                                                                        DEFENDANT

## **RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.     INTRODUCTION**

On November 17, 2020, Plaintiff Matthew J. White ("White") filed a Title II application for a period of disability and disability income benefits. (Tr. at 22). In the application, he alleged disability beginning on November 26, 2018, although he subsequently amended his onset date to October 8, 2018. *Id*. The application was denied

---

[1] On November 30, 2024, Carolyn Colvin was appointed as Acting Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Colvin is automatically substituted as the Defendant.

initially and on reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied White's application by written decision, dated December 9, 2022. (Tr. at 22–38). The Appeals Council denied White's request for review on March 20, 2023. (Tr. at 1–2). The ALJ's decision now stands as the final decision of the Commissioner, and White has requested judicial review. For the reasons stated below, this Court recommends that the decision of the Commissioner be reversed and that the case be remanded to the Commissioner for further proceedings.

## II.     THE COMMISSIONER'S DECISION

White was 32 years old on October 8, 2018—the amended alleged onset date of disability. (Tr. at 36). He meets the insured status requirements of the Social Security Act through December 31, 2023.[2] (Tr. at 24).

The ALJ found that White has not engaged in substantial gainful activity since October 8, 2018.[3] *Id*. At Step Two, the ALJ determined that White has the following severe impairments: mild levoscoliosis of the lumbar spine, migraine headaches, depression, panic disorder, and post-traumatic stress disorder ("PTSD"). *Id*.

---

[2] "In order to receive disability insurance benefits, an applicant must establish that he was disabled before the expiration of his insured status." *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c)).

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

At Step Three, the ALJ found that White's impairments did not meet or equal a Listing.[4] (Tr. at 24–26). The ALJ next concluded that White had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following restrictions: (1) can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds; (2) can occasionally balance, stoop, kneel, crouch, and crawl; (3) can occasionally reach overhead/work overhead bilaterally; (4) must avoid concentrated exposure to extreme cold, wetness, humidity, noise, *i.e.*, no jobs with a noise rating higher than "moderate/3" per the Dictionary of Occupation Titles ("DOT"); (5) must avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and hazards, *i.e.*, no work at unprotected heights, no work around dangerous unprotected moving machinery, and no driving as a part of work; (6) can perform work involving occasional incidental interpersonal contact with co-workers and supervisors and that does not involve contact with public; (7) can perform work where the complexity of tasks is learned and performed by rote, with few variables, and little use of judgment; and (8) can perform work where the supervision required is simple, direct, and concrete. (Tr. at 26).

At Step Four, the ALJ found that White is unable to perform any past relevant work. (Tr. at 36). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ determined, based on White's age, education, work experience and RFC, there are jobs in the national

---

[4] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id.*

economy that White can perform. (Tr. at 37–38). Therefore, the ALJ found that White was not disabled from the amended alleged onset date through the date of the decision. *Id.*

## III.  DISCUSSION

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. White's Arguments on Appeal

White contends that the evidence supporting the ALJ's decision is less than substantial. He argues specifically that: (1) the ALJ did not fully and fairly develop the record, (Doc. 9 at 8–12); (2) the ALJ erred at Step Two, *id.* at 12–14; (3) the ALJ erred at Step Three, *id.* at 14–18; (4) the ALJ failed to properly evaluate White's subjective complaints, *id.* at 19–21; (5) the RFC did not fully incorporate White's limitations or fairly consider the medical opinions, *id.* at 21–24; and (6) the ALJ erred at Step Five, *id.* at 25. The Court agrees that the ALJ's RFC determination did not adequately account for White's mental impairments/limitations and will direct its attention thereto, as that issue is dispositive.[5]

### C. White's Mental Impairments and the RFC

White is a combat veteran who suffers from PTSD, depression, and panic attacks caused by service-connected traumatic experiences while serving in Afghanistan. (Tr. at 26–29, 57–65, 578–590, 1702–1709). In fact, he sustained a traumatic brain injury during combat and has a 100% unemployable rating with the Veterans' Administration ("VA"). (Tr. at 1039, 1702). According to White, he was fired from two previous jobs for "outburst behavior" and threats affecting his superiors and coworkers. (Tr. at 50–51, 60–62). As to one of his previous jobs, White testified that:

> I had been talked to a few times in the time I was there for my . . . my outbursts. How I talk. I . . . I guess how I talked and approached people. That was a big thing of me. I . . . I couldn't let the military go[,] and I . . . I looked

---

[5] *See Noerper v. Saul*, 964 F.3d 738, 741 n.1 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.").

> at people as civilian[,] and I . . . that was . . . it's still hard. It's still hard to talk to people in the way that . . . it's okay in . . . in our society. So, I . . . there were a lot of outbursts[,] and I was counseled a couple times.

(Tr. at 60–61). Similarly, White testified that, after an outburst with VA staff, he was "not let back in the door." (Tr. at 27, 68). He was later diagnosed with intermittent explosive disorder. (Tr. at 28). White also testified that he remains virtually a recluse in his home and, when he leaves the house, he worries the "worst is going to happen." (Tr. at 28, 57–58).

In 2018, at the beginning of the relevant time period, White spent 52 days in an inpatient psychiatric hospital for a suicide attempt by hanging, and he admitted he had multiple suicide attempts. (Tr. at 394–413, 744–761). In October 2018, White reported aggression towards others and significant depression. (Tr. at 1147). At a VA visit in December 2018, White endorsed irritability, outburst, nightmares, and trouble sleeping. (Tr. at 588–589). The VA staff psychiatrist wrote in 2018 that White was "high risk" given his mental health exacerbations and suicide attempts. (Tr. at 587–589). In December 2018, his VA psychologist noted intrusive memories and dreams, persistent negative thoughts, reckless and destructive behavior, marked irritability, and sleep disturbances, among other things. (Tr. at 582–583).

A psychological consultative examiner, Dr. Don Ott ("Dr. Ott"), interviewed White in March 2021. White reported interrupted sleep, inconsistent appetite, irritability, intrusive memories, and hallucinations. (Tr. at 1035–1045). Dr. Ott noted that White "reported no major conflict with other people" and "very seldom has social contact outside his home." (Tr. at 1039). While Dr. Ott found that White would have no specific limitations in

6

completing work tasks—stating that "[h]is capacity to cope with the mental demands of work is adequate"—Dr. Ott also noted that White is "easily agitated and occasionally gets confused." (Tr. at 1041). Notably, Dr. Ott did not comment on whether White could interact in a socially adequate manner at work. *Id*. Nevertheless, the ALJ found Dr. Ott's opinion to be persuasive. (Tr. at 35). Specifically, the ALJ found Dr. Ott's opinion to be consistent with the opinions of the state-agency consultants, who found that White could only have incidental interpersonal contact at work, with direct supervision, (Tr. at 35, 87, 105), even though Dr. Ott made no findings with regard to White's ability to interact with others at work.[6]

A second psychological consultative examiner, Dr. Samuel Hester ("Dr. Hester"), evaluated White in August 2022, after the March 8, 2022 hearing before the ALJ. Dr. Hester found significant functional limitations. (Tr. at 1702–1711). Considering irritability, outbursts, past job performance, PTSD, and suicidal thoughts, the examiner wrote that White would have limited capacity to communicate and interact in a socially adequate manner. (Tr. at 1708). Dr. Hester also wrote that White was not able to cope with the mental demands of tasks and could not complete work tasks in an acceptable time frame. *Id*. The

---

[6] For example, both state agency opinions found White moderately limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. at 95, 108). Dr. Ott found no specific limitations in the area of pace. (Tr. at 1041). Additionally, the state agency examiners found White moderately limited in his ability to "accept instructions and respond appropriately to criticism from supervisors," (Tr. at 95, 108), but again, Dr. Ott did not comment directly on whether White had the capacity to interact with coworkers, supervisors, or the general public in a socially adequate manner. (Tr. at 1041).

ALJ found this opinion was not persuasive but gave little explanation for that finding.[7] (Tr. at 35). The ALJ specifically stated: "The opinions expressed by Dr. Hester are not persuasive as they are not consistent with the state agency consultants' opinions or Dr. Ott's opinion. Further, Dr. Hester's[] opinions are not supported by the objective findings including the objective findings in his report." (Tr. at 35).

After considering the medical evidence, including the varying medical opinions, the ALJ determined White had the RFC to perform simple work with direct supervision and limited social interactions.[8] Particularly, the RFC stated that White could perform work involving occasionally incidental interpersonal contact with co-workers and supervisors but no contact with the public. (Tr. at 26). The record shows, however, that any interaction with people, especially coworkers and supervisors, has proved problematic and potentially dangerous for White and those around him. White is a recluse with a real fear that he will

---

[7] ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No. 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citations omitted).

[8] "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citation omitted). "In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) (citation omitted).

hurt someone due to PTSD.[9] (Tr. at 58–65). Moreover, the record is rife with examples of White's inability to communicate with coworkers, supervisors, medical professionals, family members, etc. in a socially acceptable manner. (Tr. at 61, 65, 230–231, 1576). As the Eighth Circuit noted, in a case dealing with a Veteran suffering from PTSD, "unlike many physical impairments, it is extremely difficult to predict the course of mental illness. . . Symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (citing *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987)).

Considering the record in its entirety, the Court finds that the ALJ did not properly consider all of White's mental impairments in determining White's RFC. Markedly, the ALJ did not fully incorporate the evidence regarding White's interpersonal problems; the ALJ improperly relied on Dr. Ott's psychological consultative examination, even though Dr. Ott did not opine on White's "capacity to communicate and interact in a socially adequate manner," (Tr. at 1041); and the ALJ improperly discounted Dr. Hester's opinion that White "had a limited capacity to communicate and interact in a socially adequate manner," (Tr. at 1708). It stands to reason, based on the record in this case, that a job involving even a modicum of interpersonal contact would be extremely challenging for

---

[9] When discussing why he isolates at home, White testified, "I think the world's a dangerous place and really I think it's – to me, I think a lot of that I – it's safer if I just stay here because then I won't possibly have to deal with somebody trying to do something to me or take me out in a way I'd have to defend myself in a way I wouldn't want to." (Tr. at 63). When asked if he was worried about hurting somebody, White testified, "I'm always wondering if someone's going to . . . the things that have happened in my life, I'm always looking over my shoulder. I'm always thinking that – could that be a bomb on him, or could that be – are they going to pull a – why are they acting like that? Why is their body movement like that? I don't want to kill any – I don't want to kill anymore people than I – than I already have." (Tr. at 65).

White. The RFC did not properly reflect or incorporate White's credible limitations, which is reversible error.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his RFC determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 17th day of January, 2025.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE